We will take up Aliff v. Vervent. Mr. Purcell. Thank you, Your Honor. May it please the Court. To start our discussion today, it occurred to me on my way in that I should bring a matter to the Court's attention. About three weeks ago, the trial court granted a leave to amend the complaint in this matter. So the complaint that's at issue in this appeal is no longer the operative complaint. There are two new plaintiffs. Two of the previous plaintiffs have settled out. And whatever happens today with decisions with respect to the complaint that was filed and was at issue when this appeal was filed, I'm not sure how the Court tailors its decision given that there's a new complaint. So if the Court decides that under the old complaint, arbitration is appropriate, that wouldn't apply to the new complaint. Or if the Court decides... Why wouldn't it? What's different about the new complaint? Well, this is literally what I didn't... So the new complaint... Same arbitration agreement that you're relying on, correct? Correct, Your Honor. Same arbitration agreement. To which the party seeking to compel arbitration is not a signatory? Correct, Your Honor. Your agency arguments aren't any different with respect to the new complaint than this complaint, are they? They're not, Your Honor. Okay, so maybe after we decide this case and whatever we tell the judge he's supposed to do, you'll have another argument. But how does the new complaint change the issue in front of us at all? Well, if under the original complaint you either decide that arbitration is appropriate or not appropriate, that decision happens. But then there's a new operative complaint, so would that decision... I understand, but the new operative complaint raises the same claims. It may have different parties. It involves the same... You're seeking to compel arbitration, I guess, under the same arbitration agreement, right? Yes, Your Honor. So how does it change things? We'll rule about this however we rule. Okay. In any case, we'll go back to the district court and you can make whatever arguments you make that our ruling doesn't apply to the new complaint. So I'm just not sure why it makes a darn bit of difference. Are you suggesting that this appeal is moot? I was just raising this to the court's attention because I don't know... This is my first experience with an appeal where while the appeal is pending, the operative complaint has changed. So the operative complaint, for example, attaches the loan agreement that in this appeal the appellee's claim was not an important part of the original complaint. So it's just a new experience for me. I didn't know how important the court would think. I didn't know if the court would think, oh, well, because there's a new complaint, that reshuffles the deck and we don't want to spend our time and resources addressing this. But if instead the court, as Judge Hurwicz suggested, could provide guidance to the trial court that it could use with this new complaint, well, that's probably helpful as well. So I just thought it was important to raise it to the court. Mr. Purcell, you'd agree that Kramer says that you have to have clear and unmistakable evidence of an agreement to arbitrate by non-signatories. Where is the language that shows clear and unmistakable evidence of an agreement to arbitrate with non-signatories? Well, Your Honor, I think that issue goes to the sort of the first issue, the sort of gateway issue. No, it goes to both issues. So identify for Judge Boo where in the agreement there's a clear and unmistakable indication of agreement either to arbitrate arbitrability or the end issue with your client. Well, that is where I'm going, Your Honor, because I think that there are really the best use of our time today is to talk about the two reasons why the non-signatories who are my clients should be allowed to enforce this arbitration. That may be the best use of your time, but there's a question in front of you. And so, and it's the same question I would have asked if I was as smart as Judge Boo. So the question is, where in the agreement, point me to the part of the agreement that you say that you contend is clear and unmistakable or whatever adjectives you'd like to put in front of it, indication of the party's intent to arbitrate these issues with your client. Well, Your Honor, that's where I keep trying to get to. It's in the agreement. We have the agreement in front of me. Just tell me where in the agreement it is. The loan agreement says that it's going to, that all claims related to all aspects of the loan, including the servicing, the collection, all of it, is going to be arbitrated. All right, okay. I agree with you. I agree with you. I want to make your job easier. I think the subject matter described in the loan agreement is broad enough to encompass this dispute. My question is, where is the agreement to arbitrate disputes with your client? And that's what I keep trying to get to, Your Honor. And that is why I'm— It's in the agreement. Okay, so you're right. The subject matter is totally there. And there is nothing in that agreement that says that they are going to arbitrate all claims with their loan servicers. And that's why the other aspects are so important. The law of this circuit states quite clearly that agents of a signatory can't enforce these types of arbitration agreements. And one of the major issues at the trial court was they were claiming that my clients were not agents of Deutsche Bank. And it's important to focus on the fact that my clients actually absolutely were agents of Deutsche Bank. I'm reading the loan agreement, or the agreement between your clients and Deutsche Bank, and it says they're only agents for a very limited purpose and that they are otherwise independent contractors. Is it your position that Deutsche Bank is liable for the various allegations against your client, that what it did in collecting the loans, if in fact that's illegal, you were acting as the agent of Deutsche Bank and therefore they're liable under respondeat superior? Well, Your Honor, the agency agreement, the limited agency agreement, very clearly states that we're their agent for the purposes of loan servicing. It's quite much more limited, isn't it? Go to the agency language and let's see what it says. The trust hereby appoints the servicer as its agent for endorsing and depositing negotiable instruments, checks, money orders, etc., made payable to the trust, but in possession of the servicer for the purpose of crediting borrower accounts. Okay. And then it says, for all other purposes, I'm not reading exactly, but that you're an independent contractor, right? Well, yes, Your Honor. But all of the aspects for which the reason that my clients are here in this case, because the panel is obviously quite familiar with the complaint, and there was all of these chaudry, chaudry allegations against Deutsche Bank, and then what they're coming after my clients for is servicing these loans. That's why. And the agency that we're dealing with here is about servicing the loans. What is described there is servicing the loans. No, no, that's not quite right. What they're saying, but the allegations are, is that your client, Mervyn, offered to settle the student's debt, even though the statute of limitations had already run, in an effort to induce them to pay, make a payment, which would then reset, restart the statute of limitations. So it's kind of like a fraudulent way of obtaining a longer statute of limitations and collecting more debt. You may say, they allege that Mervyn did that, not Deutsche Bank. Well, they do, Your Honor, but that was part of servicing and collecting the loans, which, again, is part of what our duties were under these agreements. Well, but they're not complaining. They're not complaining. They're purely an agent with respect to, you have the duty to service the loan. I don't doubt that. But the agreement says as an independent contractor, except when you're negotiating instruments and depositing them. Their complaint seems to be not about your negotiating instruments or depositing them, but about representations you made to induce them to make payments on the loan. So tell me how that's inside the limited agency portion of this agreement. Well, Your Honor, also, and this is a little inside baseball in the complaint, but that's why I do think it's helpful for me to point this out. In the complaint, they have allegations that say that when we were servicing the loans, when we were sending correspondence, we were supposed to tell them about defenses to these loan agreements. And this is getting a little bit into the estoppel argument, but I think since we don't have that much time left, it's a fair thing to do. So they're saying that, as Judge Wardlaw brought up, that there's a statute of limitations issue, correct? So that's one of the issues that we have. We're trying to collect when there's a statute of limitations issue, and also there's the holder rule. Both those things are defenses to contractual obligations. And the contractual obligations here are the loan agreement. And that's why I really think, given the limited time we have left, the estoppel argument, I really do think, is the strongest one that we have. Because there's the two issues, whether it's under Kramer or under the Shivkoff case, both these courts' decisions, that you can apply estoppel when the claims are so intertwined with the agreement or when the allegations are so intertwined with somebody who's a signatory. And under both of those here, we should be able to enforce a settlement agreement because of the allegations in the complaint. And those allegations are that we were part of a RICO conspiracy with Deutsche Bank. Deutsche Bank's unquestionably a signatory to the agreement, and that agreement by the trial court has been held valid, and the arbitration provision has been held to be enforceable here. Well, they're claiming that we and Deutsche Bank were in cahoots this whole time, in cahoots with trying to collect on these loans, which would not exist but for the loan agreement. And they're also claiming, as I said, that there's a statute of limitations defense. What is that defense to? The loan agreement. Absent the loan agreement, that wouldn't even be relevant. If they want to claim that, oh, you guys just committed fraud, then their defense to that would be fraud, or the response to that would be start a criminal proceeding against whoever defrauded you. That's not what they're saying. They're saying you should have informed them about contractual defenses to your loan agreement. So it's a little bit through the looking glass to claim that this case is not all about those loan agreements, and that their allegations against us, which is you're collecting on the loan agreements in a way that we don't think is proper, you committed a RICO violation with Deutsche Bank with respect to these loan agreements, which could not occur if the loan agreements didn't happen, and that you failed to provide the notice pursuant to the holder rule. And that holder rule sort of notice issue is in the loan agreement. And in their complaint, they're saying they cite to that. And as I said before, in their new complaint, they actually attached the loan agreement as one of their exhibits. So just this world where the loan agreement is not intertwined or vital to the complaints is just one I don't think really squares with the actual facts. All right. Thank you, Counselor. You're well over your time. Mr. Davis. Thank you, Your Honors. Actually, I'd like you to start with your response to the equitable estoppel argument. Of course. So as to equitable estoppel, the linchpin of equitable estoppel, that doctrine, is fairness. That doctrine prevents a party from claiming a benefit of a contract containing an arbitration. Let me stop you. I think that is the linchpin of equitable estoppel. But unfortunately or fortunately, depending on your point of view, the California courts seem to have set up a separate equitable estoppel doctrine for arbitration, which doesn't talk about those issues, but rather talks about whether claims are inextricably intertwined. So for me, that's the hard part of this. And let me just tell you why. I don't think there's any doubt that when both Deutsche Bank and this defendant, Pervin, were being sued, Deutsche Bank was entitled to arbitration, and there probably was a reasonable argument that your claims against Pervin were intertwined, at least as to Rico. Why aren't they still intertwined, even though you've dismissed Deutsche Bank? Well, you're referring to the second Goldman prong. Yeah. Interdependent and concerted misconduct between the non-signatory and the signatory. Yes. That's the first half of the second prong. The second half of the second Goldman prong requires that the allegations of interdependent misconduct, they need to be founded in or intimately connected with the obligations of the underlying agreement. In this case, it's the loan agreement. And if you look at each of the student's claims in this case, there is not a single reference to any term or condition in the loan agreement. This is not a situation where the students are before the court saying, look, Pervin or Deutsche Bank breached this duty owed to us. But at the same time, we don't want to comply with the arbitration provision in that loan agreement. Let me walk this backwards for a second, just so you understand my concern. As your friend said, the claims provision in the arbitration agreement is quite broad. Anything that relates to it anyway. So had you simply brought a RICO claim against Deutsche Bank, would it have been subject to arbitration? I believe so. Yeah. I think so, too. Yeah. Are you bringing an arbitration claim against – are you bringing a RICO claim against Deutsche Bank and its co-conspirator, Pervin? And why then doesn't it fall under the arbitration clause, even though you've dismissed Deutsche Bank? But they're clearly one of the conspirators because you can't have a RICO claim without more than one person. So it would be enforceable as to Deutsche Bank because of their status as a signatory to the arbitration agreement. The students clearly agreed to arbitrate such disputes with the lender, Deutsche Bank. They did not agree to arbitrate such disputes with any non-signatory. And as this court asked of my colleague initially with regard to arbitrability, where's the evidence that the students agreed to arbitrate with Pervin? We're talking about equitable estoppel here, and I think Judge Wardlaw tried to focus you on that. So if there is some California – there is some law in California for the proposition that when a party to an arbitration agreement compels arbitration, then other parties can also join in the arbitration, even though they're not signatories. And that's the – I can't pronounce the case. It's a recent California court appeal. Noteworld. You know what it is. And so why isn't this like that? I mean, I understand what – you went through two steps. You sued both parties. The judge said, I'm going to compel arbitration. You then dropped – they swore arbitration, I'm sorry. You then saw Deutsche Bank. You then dismissed Deutsche Bank. Pardon me, Your Honor. I think you're referring to Schiffkopf, the – No, I'll find the name, but – It's either Braschia Gapolin, The Noteworld, or Schiffkopf. Okay, but whatever the case, that's my concern. Have you manipulated the system here by dropping your claims against Deutsche Bank because you knew that if you kept those, your claims against Vervin would likely have to be arbitrated with them? So that issue was addressed in a recent Ninth Circuit case, Franklin, where a nurse sued a hospital with whom she was working as a temporary employee. And she had an employment agreement with a staffing agency that had an arbitration provision. But she only sued the hospital with whom she didn't have a contract. And the court said, wait a minute, wait a minute. We see that you only sued the entity with whom you did not have an arbitration agreement. You're playing fast and loose with this arbitration issue here. We're not going to permit that. But that's only one component of that case. But here you sued both parties. The district court granted Deutsche Bank's motion to compel arbitration. And then you dismissed Deutsche Bank and proceeded solely against Vervin, right? That's correct. And part of our reasoning was that we're trying to obtain relief for a class here. In arbitration, we would have only been permitted to obtain relief on an individual basis. So it wasn't in our dismissal of Deutsche Bank doesn't, in my opinion, alter any analysis pertaining to equitable estoppel. Mr. Davis, the trial judge, at least under the Fair Debt Collections Practices Act, ruled that the issues arise from the servicing agreement rather than the loan agreement. Do you think that is true for the state law claims and for the RICO claims? I think it applies to both the FDCPA claim and the Rosenthal Act claim. The service agreement sets forth Vervin's duties as a debt collector. But it also is relevant to the RICO claim because the RICO claim alleges that this enterprise, including Vervin and Activate Financial, part of the allegations pertain to their activities to continue to collect debts after they knew that these loans were part of a fraudulent loan scheme. So I would say that it has relevance to each of those three claims. Your Honor, I would just like to make one last point, if you don't have any further questions. As this court stated in Murphy v. Direct TV with regard to equitable estoppel, it's particularly inappropriate where consumers, such as the students here, are seeking the protection of consumer protection laws. And that's precisely what is happening here. They're not before this court, they were not before the district court, saying Vervin, who's not a party to the loan agreement, or Deutsche Bank, owed me this under the loan agreement and I want that, I'm owed that and I want that. But by the way, I'm not going to comply with that arbitration provision. They're not trying to play fast and loose with the court, with arbitration law, with their contractual obligations. They're not trying to have their cake and eat it too. Can I ask you a quick question about the amended complaint that your friend brought it up? What do we do with that? So my thoughts on that are the court can render a judgment as to agency, so speaking of their three key arguments, agency and arbitrability are really in no way impacted by the amended complaint. The agency argument comes from the service agreement. That has not changed. The arbitrability argument comes from the loan agreement. The arbitration agreement has not changed. Equitable estoppel, however, is the trickier issue because equitable estoppel requires an analysis of the allegations and the claims as set forth in the complaint. And are they different? Well, to preface my answer to you, I think we win on either complaint. That may be the answer you'd like to give, but it's not the answer to my question. Are your allegations in the amended complaint different than your allegations in the original complaint? They are different, but not in a way that impacts... But we don't know that because it's not in front of us. And it supersedes your original complaint. So under those circumstances, why shouldn't we just send the whole, to use a legal term, magilla, back to the district court to take another look at whether or not the claims are so intertwined that equitable estoppel would apply? Your Honor, this might be helpful for the court to understand how the amended complaint may change the equitable estoppel analysis or may not. This argument that the amended complaint somehow renders Vervant's equitable estoppel analysis so much stronger was raised by Vervant in their opposition to our motion to amend the complaint. Vervant said, look at all these new references to the complaint. And the district court, Judge Sebrant, addressed that argument and said, there may be additional references to the complaint, but they're not seeking relief under the loan agreement. And he rejected that argument. But we don't have his ruling. See, my difficulty here is that you chose to amend the complaint while the appeal was pending. We don't have that amended complaint in front of us. The district court granted your motion. The district court may well determine that it's appropriate to arbitrate the amended complaint. Maybe he's already implicitly determined, or not to arbitrate, but to deny a motion to compel arbitration on the amended complaint. But none of that's in front of us. And so you're saying, you're telling us why you would win if it were all in front of us. But I'm trying to figure out what we do under this circumstance. We're deciding about a complaint that no longer exists. That's right. I think there are three options, one of which I'm not advocating for. And the one I'm not advocating for is to make a determination as to the amended complaint. Because that's not before this court. It's either this issue is moot because we're analyzing equitable estoppel on a complaint that no longer exists. Or you render an opinion as to equitable estoppel as to the original complaint. But frankly, because of the amended complaint, it's not clear to me what relief appellants are asking the court. There are two new plaintiffs against whom Verbin has not moved to compel arbitration. And as to the original plaintiff, she is in a new complaint. I suppose we could roll us to the first two issues and decide the third issue has been mooted by the filing of the amended complaint and send that back to the district court. I think that would be good. Your Honors, may I be heard for just a minute? Just a second, counsel. That question was directed toward Mr. Davis. And I'll give you a minute to respond when his time is finished. So I saw that as a possibility. And I think that would be entirely appropriate. Let me raise another possibility just so that both sides can consider it. I suppose we could either retain jurisdiction or remand and ask the district judge whether or not they haven't sought, I think the other side hasn't sought to compel arbitration with respect to the new complaint. Am I right? That's correct. Ask the district judge to let us know whether or not his ruling changes at all with respect to the new complaint. And then we'll have heard the case. I'm sure the judge will tell us now. And then we can move on from there. But it does seem kind of strange to say, we're going to give you a couple of rulings on parts of the case that we think were remanded. That's just a third suggestion. I may get off the top of my head. Can I point out one last thing? Just the motivation for the amendment came from Verbin essentially picking off two of our three plaintiffs. So we were scrambling to find substitute plaintiffs for them. All right, thank you, Mr. Davis. Mr. Purcell, I'll give you another minute. Thank you, Your Honor. The loan agreement that appellees have claimed has no relevance or barely any relevance to this matter is a full-on exhibit to the amended complaint. We have it anyway. It's in the record. What I'm saying is that when the court is trying to fashion a remedy in terms of efficiency, it feels that even under the present complaint, equitable establishes an issue that the trial court should maybe consider in a different manner. The fact that the amended complaint actually focuses more on that loan agreement. Right, but you haven't made a motion to compel arbitration on that amended complaint, so we're kind of ahead of ourselves here. Well, and our response date for responding to the amended complaint is December 3rd. Okay. All right. I think we have a full-picture counsel, and this case has gone well over. So we will submit this, submit Elie v. Vervant and figure out among ourselves how best to handle the filing of the amended complaint. So thank you very much for arguing it. Thank you for your time today.
judges: WARDLAW, HURWITZ, Bough